IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ENERGIZER BRANDS, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Civil Action No. 4:16-cv-00223-CEJ |
| | ) |
| THE PROCTER & GAMBLE COMPANY, THE GILLETTE COMPANY, and DURACELL U.S. OPERATIONS, INC. | ) |
| | ) |
|     Defendants. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Energizer Brands, LLC ("Energizer") respectfully requests the Court to deny the Motion to Dismiss (ECF Nos. 29, 30) ("Motion") filed by The Procter & Gamble Company, The Gillette Company, and Duracell U.S. Operations, Inc. (collectively, "Duracell" or "Defendants").

## I. INTRODUCTION

The allegations of Energizer's Complaint, which must be accepted as true for purposes of Duracell's Motion, make clear why Defendants prefer the Court to resolve this matter without any evidentiary record of their misconduct. This action arises from Defendants' willful breach of a contract restricting Duracell's use of any bunny trademarks in the United States, and from the direct and contributory trademark infringement, trademark dilution, and unfair competition resulting from their conduct.

Not only *can* Energizer allege facts establishing Duracell's liability for those torts, *it has explicitly done so in the Complaint*. Misapprehending the Fed. R. Civ. P 12(b)(6) standard, Duracell asserts unsubstantiated "facts" purporting to contradict those in the Complaint in an improper attempt to bypass discovery and adjudicate claims before a single document has been ex-

changed, a single interrogatory answered, or a single deposition taken in this case. In doing so, Duracell attempts to impose legal burdens and standards on Energizer that simply do not exist, and this Court therefore should deny the Motion.

## II.   RELEVANT FACTS

For more than 20 years, Energizer has sold batteries under an iconic trademark consisting of a pink toy bunny banging on a drum (the "Energizer Bunny"):



ECF No. 1 ("Compl.") ¶ 1. Energizer owns an incontestable federal trademark registration of the Energizer Bunny, and has widely used the trademark on its battery packaging. *Id.* ¶¶ 1-2.

In certain areas outside the United States, Duracell uses a trademark consisting of a pink toy bunny (the "Duracell Bunny"). *Id.* ¶ 3. In 1992, Energizer and Duracell entered into agreements governing the parties' uses of their respective bunnies (collectively, the "Agreement"). *Id.* The Agreement contains a confidentiality provision, but restricts use of the Duracell Bunny in the United States. *Id.* ¶ 29. Duracell has no rights in the Duracell Bunny in the United States. *Id.*

Notwithstanding Energizer's federally-registered trademark rights in the Energizer Bunny and the Agreement, Energizer recently discovered batteries for sale at numerous brick-and-mortar and online retail outlets in the United States with the Duracell Bunny on the packaging, as depicted below (the "Unlawful Packaging"):

  

2

Duracell's use of the Duracell Bunny on packaging sold in the United States breaches the Agreement and is likely to cause confusion and dilution. *Id.* ¶ 5.

Upon discovering batteries for sale in the Unlawful Packaging, Energizer requested Duracell to cease all use of that packaging in the United States. *Id.* ¶ 37. As alleged in the Complaint, even though Duracell requires its affiliates to agree not to violate the trademark rights of others and to accept responsibility in holding their suppliers and subcontractors accountable for trademark violations, Duracell has refused to address the Unlawful Packaging's appearance in the United States. *Id.* Indeed, despite Defendants' actual notice, use of the Unlawful Packaging has proliferated, *see id.*, and continues to do so (with numerous additional post-Complaint sightings of the Unlawful Packaging nationwide).

### III.   ARGUMENT AND CITATION OF AUTHORITIES

#### A.  The Rule 12(b)(6) Standard

The notice pleading standard of Fed. R. Civ. P. 8(a) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." This "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define the disputed facts and to dispose of claims lacking merit." *Indus. Compressor Supplies, LLC v. Compressed Air Parts Co.*, No. 12-1446, 2013 WL 657225, at *2 (E.D. Mo. Feb. 22, 2013) (denying motion to dismiss trademark infringement complaint).

"When ruling on a motion to dismiss, the court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (reversing grant of motion to dismiss). On a Rule 12(b)(6) motion, a court asks whether the complaint pleads "enough factual matter (taken as true) to suggest" the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556

(2007). This standard requires "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In *Erickson v. Pardus*, 551 U.S. 89 (2007), decided shortly after (and quoting) *Twombly*, the Supreme Court vacated the grant of a motion to dismiss, observing: "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"[1] "Notice pleading does not generally require great detail or a recitation of potentially relevant facts in order to put the defendants on notice of plausible claims against them." *Rogers v. Univ. of Mo. Bd. of Curators*, No. 11-CV-515-CEJ, 2011 WL 2214177 (E.D. Mo. June 7, 2011). As a result, a Rule 12(b)(6) dismissal should issue "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." *Indus. Compressor Supplies,* at *2. Because of "the fact-intensive likelihood of confusion" analysis (and similarly fact-intensive dilution standard), "few trademark cases are resolved on motions to dismiss." *Moresource, Inc. v. Extra Help, Inc.*, No. 13 CV 235, 2013 WL 2338406, at *4 (E.D. Mo. May 29, 2013) (denying motion to dismiss trademark claims) (citation omitted); *accord Tecumseh Poultry LLC v. Perdue Holdings, Inc.*, No. 12 CV 3032, 2012 WL 3018255, at *4 (D. Neb. July, 24, 2012) (same).

**B. Energizer's Count 1 Sufficiently States a Breach of Contract Claim.**

The Complaint alleges the parties entered into a confidential Agreement in 1992 resolving a dispute concerning the Duracell Bunny and the Energizer Bunny. Compl. ¶¶ 29, 40. The Complaint avoids disclosing specific information because of the Agreement's confidentiality

---

[1] *Accord Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (reversing grant of motion to dismiss; "Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.' *Twombly* and *Iqbal* did not abrogate the notice pleading standard of Rule 8(a)(2).").

4

provision, but alleges that "in general terms the Agreement restricts and limits use of the Duracell Bunny in the United States." Compl. ¶ 29. The Complaint alleges Duracell materially breached the Agreement because, *inter alia*,

> "Duracell has, either directly or through others under its control, marketed, advertised, distributed, *offered for sale* and/or sold batteries in the Unlawful Packaging to the public in this judicial district …." *Id.* ¶ 13 (emphasis added).

> "Duracell has manufactured, distributed, *offered for sale, or sold*, and/or permitted, authorized, and/or directed one or more third parties over whom it may exercise control to manufacture, distribute, offer for sale, or sell, batteries in the United States in packaging bearing the Duracell Bunny," and damaged Energizer as a result. *Id.* ¶¶ 41-42 (emphasis added).

> "Duracell's use and actual knowledge of use of the Duracell Bunny on packaging for batteries distributed *and sold* in the United States over which Duracell has the right to exercise control violates the Agreement …." *Id.* ¶ 35 (emphasis added).

> "Despite having actual notice from Energizer, as well as … actual notice based on the knowledge of its employees seeing the product, or information retailer data or other sources, Duracell has not taken meaningful steps to curtail distribution, *offers for sale or sale* of batteries in the Unlawful Packaging in the United States." *Id.* ¶ 37 (emphasis added).

The Complaint also alleges that Duracell "supplies it products to Duracell's Affiliates, which Duracell knows or has reason to know are engaged in the distribution and sale of batteries in the Unlawful Packaging in the United States, and Duracell has continued to supply such products despite this knowledge." *Id.* ¶ 50. Moreover, the Complaint identifies seven retailers selling DURACELL batteries bearing the Duracell Bunny, along with photographs. *Id.* ¶¶ 31-33.

Duracell contends Energizer fails to state a claim for breach of contract because it fails to plead the "essential element" that "Defendants themselves sold the Duracell Bunny products in the United States." Motion at 5. Not only do *all* of the quoted excerpts above make that very allegation, but it is not at all an "essential element" of a breach of contract claim for Duracell to have sold Duracell Bunny products in the United States (or, as discussed below, to support Ener-

5

gizer's trademark claims). In fact, this argument appears to be nothing more than an effort by Duracell to capitalize on Energizer's compliance with the confidentiality provision of the Agreement in its public filing. Energizer's contract claim sufficiently puts Duracell on notice, particularly given that Duracell has the Agreement and well knows the provisions at issue.[2]

### C. Energizer's Counts 2, 4, 8, 6, and 9 Sufficiently State a Claim for Trademark Infringement, Unfair Competition and Trademark Dilution.

As outlined above, the Complaint properly pleads that Duracell engaged in conduct constituting "use" of the Duracell Bunny on battery packaging in the United States. In addition to the excerpts above, the Complaint also alleges that:

(1) Batteries in the Unlawful Packaging sold in the United States by at least seven retailers bear Duracell's primary indicator of source, the DURACELL trademark. Compl. ¶¶ 31-33.

(2) Duracell puts DURACELL batteries into the stream of commerce in direct competition with ENERGIZER batteries. *Id.* ¶ 3.

(3) "Duracell ... made and continues to make prominent use of the Duracell Bunny on packaging in the United States, and has actual knowledge of such use over which Duracell has the right to exercise control." *Id.* ¶ 36.

Contrary to Duracell's suggestion, a defendant need not engage in the *sale* of an infringing product to satisfy the use-in-commerce requirement necessary to support a trademark claim. "[C]ourts have construed the phrase 'use in commerce' broadly enough to encompass a defendant who did not actually sell or promote any goods or services in connection with the mark." *Medline Indus. v. Strategic Commercial Solutions, Inc.*, 553 F. Supp. 2d 979, 991-92 (N.D. Ill. 2008) (denying motion to dismiss direct and contributory trademark claims). For example, in *Slep-Tone Entm't Corp. v. Sellis Enters.*, 87 F. Supp. 3d 897 (N.D. Ill. 2015), the court denied a

---

[2] If additional specifics on this claim are required, Energizer respectfully requests leave to file an amended Complaint attaching a sealed version of the Agreement and additional allegations concerning the terms. *See IDT Corp v. eBay*, 709 F.3d 1220, 1223 (8th Cir. 2013). In assessing a motion to dismiss, the Court can consider the terms of a contract referenced in the complaint. *See Stahl v. U.S. Dept. of Agric.*, 327 F.3d 697, 700 (8th Cir. 2008).

6

motion to dismiss despite the defendant's argument that she never engaged in sales, and thus did not make use in commerce. The court noted that the defendant "over-simplifies the commerce analysis. In order to satisfy the use-in-commerce requirement, the infringing acts need not have actually taken place in commerce—they need only have an adverse effect on commerce." *Id*. at 906-07. The court held that the plaintiff's allegations that the defendant "reaped substantial revenue … during the time its marks were improperly displayed," that defendant's acts "were primarily profit motivated," and that defendant "financially benefited" from sales "taken together, are enough to plausibly plead use in commerce." *Id*. at 907.

Duracell claims Energizer is required to plead that "Defendants sold the Duracell Bunny products in the United States," yet Duracell cites no case in which a court has dismissed a trademark claim on that basis. Instead, courts routinely deny motions to dismiss grounded in such a narrow definition of "use in commerce." *See, e.g.*, *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1238-39 (C.D. Cal. 2014) (allegations concerning marketing agreement and advertising sufficient to defeat motion to dismiss); *Valley Forge Military Acad. Found. v. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451, 455-56 (E.D. Pa. 2014) (allegations concerning activity in connection with alumni services and donation solicitation sufficient to defeat motion to dismiss despite defendant's protests of no "use"); *AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496, 512-13 n.4 (W.D. Va. 2013) (allegations sufficient to defeat motion to dismiss); *Patterson v. ABS Consulting, Inc.*, No. 08-697, 2009 WL 1296679, at *3 (E.D. Mo. May 6, 2009) (allegations concerning use of a mark as a domain name sufficient to defeat motion to dismiss). Simply put, "[a] plaintiff is not required to demonstrate that a defendant made use of the mark in any particular way to satisfy the 'use in commerce' requirement." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 305 (2d Cir. 2013) (reversing grant of motion to dismiss).

Additionally, Duracell seeks dismissal of the Complaint based on unsubstantiated "facts" putatively establishing it is "implausible" Duracell sold the accused Duracell Bunny products. For example, Duracell asserts both that "Duracell's foreign Duracell Bunny products are initially sold in their designated country; however, they can be resold many times by many parties as they flow through the stream of commerce" and that "the Duracell Bunny is inconsistent with the brand ethos that Duracell has carefully curated in the United States." *See, e.g.*, Motion at 3.

These attempts to dispute the facts in Energizer's Complaint are improper at the pleading stage. *See Bros. of Wheel M.C. Exec. Council, Inc. v. Mollohan*, 909 F. Supp. 2d 506, 538 (S.D. W.Va. 2012) (rejecting substantively identical challenge because "Fed. R. Civ. P. 12(b)(6) requires that a reviewing court assume the truth of all facts alleged in a Complaint. Therefore, defendant's attempts to dispute certain facts of the plaintiff's Complaint are premature."). Duracell essentially requests this Court to bypass discovery and adjudicate facts on an entirely undeveloped record. Rejecting Duracell's argument, decisions repeatedly have held that "the court simply cannot make a definitive ruling on the 'use' issue without engaging in fact-finding, which is inappropriate at this stage of the litigation." *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 768-69 (N.D. Ill. 2008) (denying motion to dismiss); *Rescuecom Corp. v. Computer Troubleshooters, USA, Inc.,* 464 F. Supp. 2d 1263, 1266–67 (N.D. Ga. 2005) (denying motion to dismiss Lanham Act claims on "use" issue because "the transposition will require more factual development of the record than has been done at this early stage of the proceedings"). The Complaint pleads use of the Duracell Bunny sufficient to support Counts 2, 4, 6, 8, and 9; any challenge to the alleged facts should be lodged following discovery.

### D. Energizer's Counts 3 and 5 Sufficiently State a Claim for Contributory Trademark Infringement and Contributory Unfair Competition.

Contributory infringement or unfair competition can occur "even if a manufacturer does

8

not directly control others in the chain of distribution." *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 854 (1982); *see also Reid, Murdoch & Co. v. H.P. Coffee Co.*, 48 F.2d 817, 819-20 (8th Cir. 1931) ("These goods were supplied by the defendant for the purpose of being resold on the market, and the use of this word 'Monarch' by it made it possible for the retail merchants to commit a fraud upon the public to the injury of the plaintiff."). Specifically, a claim for contributory infringement or unfair competition occurs when: (1) a "manufacturer or distributor intentionally induces another to infringe a trademark" or (2) "if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood*, 456 U.S. at 854.

The Complaint properly pleads a cause of action for contributory infringement through at least the following allegations:

(1) Duracell puts DURACELL household batteries into the stream of commerce in direct competition with ENERGIZER batteries. Compl. ¶ 3.

(2) Duracell had actual notice of battery sales in the Unlawful Packaging in the United States based on communications with Energizer, as well as, on information and belief, information received from employees, retailer data, or other sources. *Id.* ¶ 37.

(3) "Duracell requires its affiliates, licensees, distributors, vendors, or other third parties working in concert with Duracell ("Duracell's Affiliates") to agree not to violate the intellectual property rights of others and to accept responsibility in holding their suppliers and subcontractors accountable for intellectual property violations." *Id.*

(4) "Duracell has not taken meaningful steps to curtail distribution, offers for sale or sale of batteries in the Unlawful Packaging in the United States." *Id.*

(5) "Duracell … supplies its products to Duracell's Affiliates, which Duracell knows or has reason to know are engaged in the distribution and sale of batteries in the Unlawful Packaging in the United States, and Duracell has continued to supply such products despite this knowledge." *Id.* ¶¶ 50, 62, 77.

(6) "Duracell knowingly and materially assists in or contributes to the distribution, advertising, offer for sale, or sale of batteries in the Unlawful Packaging in the United States, including, among other things, by not removing Unlawful Pack[ag]ing of which it becomes aware." *Id.* ¶¶ 51, 63, 78.

(7) "[T]he number and size of retailers carrying batteries in the Unlawful Packaging is

9

believed to have increased since Energizer first gave Duracell notice of its breach and infringement." *Id.* ¶ 37.

Ignoring these allegations, Duracell asserts Energizer "merely pleads that it found Duracell Bunny products at U.S. retailers and asks the Court to assume that Defendants must have intentionally induced or knowingly contributed to the infringement." Motion at 9. Again, Duracell suggests that in the absence of detailed allegations concerning exactly "how the Duracell Bunny products made their way to U.S. retailers"—a topic Energizer would need discovery to explore fully—the Court should reject Energizer's factual allegations and find as a matter of law Duracell played no part in the sale of DURACELL batteries. *Id.*

Energizer clearly has alleged that "Duracell has continued to supply such products despite [its] knowledge [of unlawful conduct]." Compl. ¶¶ 50, 62, 77. If Duracell denies it supplied the relevant individuals with infringing product after being put on notice, it "should so state in an answer or file the appropriate motion after discovery." *Indus. Compressor Supplies*, 2013 WL 657225, at *3. The issue is not one for a motion to dismiss. *See, e.g., Transamerica Corp. v. Moniker Online Servs., LLC*, 672 F. Supp. 2d 1353, 1363 (S.D. Fla. 2009) ("Defendants claim that Transamerica does not and cannot show that Defendants induced, knew and controlled the John Doe Defendant/registrants, because Moniker had no knowledge or control. Such a discussion goes to matters of proof, not to the necessary elements of the claims."); *Peek & Cloppenburg KG v. Revue, LLC*, No. 11 Civ. 5967(DAB), 2012 WL 4470556, at *5 (S.D.N.Y. Sept. 19, 2012) ("If as [the plaintiff] alleges, [the contributory infringer] supplied its brands to [the direct infringer] knowing they would be sold in the United States, the Court reasonably can infer contributory liability."); *Power Test Petroleum Dist., Inc. v. Manhattan & Queens Fuel Corp.*, 556 F. Supp. 392, 394 (E.D.N.Y. 1982) ("Assuming defendant had no control over subsequent entities in the chain of distribution, did it nonetheless have reason to be aware that plaintiff's mark

was being infringed? That question remains unanswered in this case. Therefore, because of the existence of this material issue of fact, defendant's motion to dismiss may not be granted.").

Allegations that a defendant "knowingly supplied the ammunition that allowed [a direct infringer] to complete the infringement" are sufficient to survive a motion to dismiss contributory-infringement claims. *Ferring B.V. v. Fera Pharms., LLC*, No. CV 13-4640, 2015 WL 4623507, at *8 (E.D.N.Y. July 6, 2015) (citation omitted); *see also Sprint Solutions, Inc. v. Cell Xchange, Inc.*, No. 8:14–CV–00233–T–27, 2015 WL 1001272, at *3 (M.D. Fla. Mar. 6, 2015) (denying motion to dismiss contributory infringement claim); *Match.Com, L.L.C. v. Fiesta Catering Int'l, Inc.*, No. 1:12–CV–363, 2013 WL 428056, at *7 (E.D. Va. Jan. 31, 2013) (denying motion to dismiss contributory infringement claim where "[t]he allegations plausibly support the reasonable inference that [defendants] each could have ended [the] infringement"); *Polo Ralph Lauren Corp. v. Chinatown Gift Shop*, 855 F. Supp. 648, 650 (S.D.N.Y. 1994) (allegation that landlord was aware that tenant sold counterfeit goods on the premises and did nothing to prevent it sufficient to plead contributory infringement claims).

Moreover, Energizer alleges not only that Defendants supply the "ammunition," but that they are obligated (by virtue of the Agreement with Energizer) and empowered (by virtue of their agreements with retailers and others) to remove the Unlawful Packaging, and replace it with non-infringing product. Compl. ¶¶ 35-37, 41, 50-51. On this basis, Energizer's allegations go far beyond the typical trademark infringement case in which the parties have no prior dealings.

The cases cited by Duracell are easily distinguishable otherwise as well. *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012) (reversing *summary judgment* on contributory infringement, finding evidence sufficient to establish a question of fact); *Tiffany (NJ)*

11

*Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463 (S.D.N.Y. 2008) (judgment following *bench trial*);[3] *TechnoMarine SA v. Jacob Time, Inc.*, No. 12 Civ. 0790(KBF), 2012 WL 2497276, at *5 (S.D.N.Y. June 22, 2012) (dismissing *claims for tortious interference* where it was "just as possible as not that the unknown distributors independently and voluntarily decided to sell to Jacob Time- without any unlawful inducement by defendant"; trademark claims dismissed on other grounds); *Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories*, No. 07-6959, 2010 WL 4968072, at *13-17 (S.D.N.Y. Dec. 6, 2010) (applying *Tiffany* standard for service providers and determining that all alleged infringements occurred *before* defendant's receipt of notice).[4]

### E. Energizer's Count 7 Sufficiently States a Claim for Contributory Trademark Dilution.

Duracell mistakenly asserts "contributory dilution has not been recognized as a cause of action." Motion, at 8. In doing so, "they ignore both an appellate and several federal district court rulings suggesting that contributory trademark dilution comports with the policy concerns underlying the Trademark Dilution Act." *Coach, Inc. v. Farmers Mkt. & Auction,* 881 F. Supp. 2d 695, 705 (D. Md. 2012) (citing cases), and those same cases denying motions to dismiss. *Id*. at 706. ("Coach has stated a cognizable claim for contributory trademark dilution"); *Coach, Inc. v. Gata Corp.,* No. 10–CV–141–LM, 2011 WL 1582954, at *5 (D.N.H. Apr. 26, 2011) (denying motion

---

[3] With regard to the decision in *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010), as another court has explained: "In requiring a higher standard of awareness of the infringing activity, the Second Circuit considered the difficulties that an online auction host has in ascertaining which Tiffany-branded products were authentic and which were counterfeit when Tiffany only made general allegations of counterfeiting. . . . These same difficulties do not apply for a manufacturer who directly supplies goods to third party retailers." *Peek & Cloppenburg KG v. Revue, LLC*, No. 11 Civ. 5967, 2012 WL 4470556, at *5 (S.D.N.Y. Sept. 19, 2012).

[4] Energizer's Complaint does not allege Duracell has the "breathtaking" burden of "controlling every downstream sale of its products" or that Duracell is responsible for policing all unlawful uses that infringe or dilute Energizer's marks. Motion at 10-11. Instead, Energizer's Complaint alleges that Duracell has continued to supply packaging bearing its own Duracell Bunny to identified individuals despite actual notice of sales in the United States of batteries in the Unlawful Packaging by those individuals, and further that it has both failed and refused to take corrective action despite having the contractual obligation (to Energizer) and the contractual right (vis-à-vis sellers) to do so. In other words, Energizer has pleaded contributory liability for its trademark claims.

to dismiss contributory dilution claim, noting such a cause of action "does, in fact, exist.").[5] Accordingly, Count 7 should not be dismissed.

### F. Energizer Has Properly Named Procter & Gamble and Gillette as Defendants.

Duracell erroneously contends the Court should dismiss The Procter & Gamble Company ("P&G") and The Gillette Company ("Gillette") as defendants. Again, Duracell seeks to hold Energizer to a higher standard than appropriate at the pleading stage. Each Defendant has notice sufficient to prepare a responsive pleading. The introductory paragraph of the Complaint states that all three defendants are referred to collectively as "Duracell" unless otherwise indicated, and aside from their individual jurisdictional allegations, *see* Compl. ¶ 9-11, a reference to Duracell is an allegation against P&G, Gillette, and Duracell U.S. Operations.

"[A]t the very least, the [Complaint] gives the defendants notice of the claims asserted against them for various trademark-related infractions." *Vantone Grp. v. Yangpu NGT Indus.*, No. 13-CV-7639, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015). It is sufficient if the Complaint "alleges joint activity amongst the [defendants]; it need not elaborate extensively on the details with regard to each defendant to comply with Rule 8." *Id.* (citation omitted). "Rule 8 [does not] require that Plaintiffs [state] the specific circumstances by which each Defendant acquired knowledge of the alleged misconduct." *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 471 (S.D.N.Y. 2005); *see also Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CCB-13-617, 2013 WL 3776933, at *2 (D. Md. July 17, 2013) (multi-count complaint—including contract, trademark and other tort claims—"that each individual associated with [defendants] facilitated the alleged scheme" sufficient to defeat motion to dismiss).

---

[5] Jurisprudence addressing contributory dilution claims "counsels *against* dismissing [them], as does a leading authority in trademark law, who has written: 'While there is no authority directly on point, there would seem to be no logical reason why the doctrine of contributory infringement should not apply to a claim under the federal antidilution law.'" *Gata*, 2011 WL 1582954, at *4 (emphasis added) (*quoting* 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 24:133, at 24–413 (2010)).

13

Energizer is not required to allege the details of the relationships between Duracell's various corporate entities at this stage. *See Polaroid ERISA Litig.*, 362 F. Supp. 2d at 471 ("Plaintiffs are not expected to know those specifics at this early stage." (citations omitted) (internal quotation marks omitted)); *Sprint Nextel Corp.*, 2013 WL 3776933, at *2 ("[The individual] defendants' argument that no conduct is directly attributable to them is an issue to resolve on the merits."). Group pleading is proper where, as here, the same claims are asserted against all the defendants. *Vantone Grp.*, 2015 WL 4040882, at *4 ("Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant."); *Hudak v. Berkley Grp.*, No. 3:13-CV-00089-WWE, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014) (In case with TCPA and state deceptive trade practices claims, noting "[p]rior to discovery, plaintiff need not explain the details of each defendant's role in the planning, funding, and executing defendants' alleged joint ... scheme.").[6]

In addition to the sufficient notice provided by the Complaint, Defendants themselves have identified these entities in correspondence concerning the subject matter of this lawsuit.[7] In addition, these same Defendants are implicated by the ownership of federal trademark registrations,[8] as well as information they place on their websites.[9]

---

[6] The cases Duracell cites about group pleading are inapposite. In each, the complaint either made it impossible (1) to state a claim against one of the defendants or (2) to determine which claims were against which defendant. *See Atuahene v. City of Hartford*, 10 F. App'x. 33, 34 (2d Cir. 2001) (complaint failed to identify which defendants were responsible for which civil rights violations); *Rysewyk v. Sears Holdings Corp.*, No. 15 CV 4519, 2015 WL 9259886, at *7 (N.D. Ill. Dec. 18, 2015) (all claims were alleged against all defendants, but the complaint made separate allegations about each defendant's business activities, which revealed that one of the defendants could not be liable; *Automated Transaction LLC v. New York Cmty. Bank*, No. 12-CV-3070, 2013 WL 992423, at *4 (E.D.N.Y. Mar. 13, 2013) ("[T]he Complaint does not state whether each claim is asserted against the Parent, the Subsidiary, or both."); *Pierson v. Orlando Reg'l Healthcare Sys.*, 619 F. Supp. 2d 1260, 1271-4 (M.D. Fla. 2009) (complaint failed to sufficiently identify which of 19 causes of action for which each of 26 named defendants was responsible). Unlike these cases, Energizer's Complaint clearly indicates all defendants are being sued for all claims.

[7] In response to Energizer's cease and desist letter, Duracell's counsel responded, *inter alia*, that "I am Counsel for The Gillette Company supporting the Duracell brand" and "As you are likely aware, P&G is the owner of its own Bunny Design marks in various jurisdictions outside of the United States, including China. P&G had designed and used similar packaging to those within the photos for the Chinese market circa 2011."

[8] According to the U.S. Patent and Trademark Office website, Defendant Duracell U.S. Operations, Inc., is listed as

## IV.   IN THE ALTERNATIVE, ENERGIZER REQUESTS LEAVE TO AMEND.

If the Court determines Energizer's Complaint is deficient in any respect, Energizer respectfully requests leave to cure any such deficiency. *See Kozohorsky v. Harmon,* 332 F.3d 1141, 1144 (8th Cir. 2003) (court abused its discretion by denying amendment to cure pleading defect); *see Estle v. Country Mut. Ins. Co.,* 970 F.2d 476, 480 (8th Cir. 1992) (district court abused discretion in denying leave to amend, noting liberal amendment policy of federal rules intended to "giv[e] plaintiff an opportunity to test claims on their merits.").[10]

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss in its entirety. If the Court determines Energizer's Complaint is deficient in any respect, Energizer respectfully moves for leave to file an amended Complaint to cure such any such deficiency.

DATED: April 21, 2016                Respectfully submitted,

/s/ Herbert R. Giorgio Jr.                William H. Brewster
David A. Roodman                     William H. Brewster (*pro hac vice*)
Missouri Bar #38109                   Theodore H. Davis Jr. (*pro hac vice*)
Herbert R. Giorgio Jr.                   R. Charles Henn Jr. (*pro hac vice*)
Missouri Bar #58524                   Jessica A. Pratt (*pro hac vice*)
**BRYAN CAVE LLP**                    **KILPATRICK TOWNSEND & STOCKTON LLP**
One Metropolitan Square              1100 Peachtree Street, Suite 2800
211 North Broadway, Suite 3600    Atlanta, Georgia 30309-4528
St. Louis, MO 63102-2750             Telephone: (404) 815-6500
Telephone: (314) 259-2417            Facsimile: (404) 815-6555
Facsimile: (314) 552-8417              bbrewster@ktslaw.com
daroodman@bryancave.com         tdavis@ktslaw.com
herb.giorgio@bryancave.com       chenn@ktslaw.com
                                                    japratt@ktslaw.com

*Attorneys for Plaintiff Energizer Brands, LLC*

---

the most recent owner of the Duracell registrations (by assignment from Defendant Gillette).
[9] Defendant P&G was listed in the copyright notice on the Duracell website at the time of the Complaint's filing.
[10] As discussed above, if the Court determines the Complaint lacks specific information from the parties' Agreement, Energizer respectfully requests the opportunity to, among other things, attach the Agreement to the Complaint for filing under seal.

## **CERTIFICATE OF SERVICE**

  I hereby certify that on April 21, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system on all parties of record.

            /s/ Herbert R. Giorgio Jr.