UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


ENERGIZER BRANDS, LLC,     )
     )
     Plaintiff,     )
     )
     vs.     )     Case No.  4:16-cv-00223-AGF
     )
THE PROCTOR & GAMBLE     )
COMPANY, THE GILLETTE     )
COMPANY, and DURACELL U.S.     )
OPERATIONS, INC.     )
     )
     Defendants.     )


## MEMORANDUM AND ORDER

This trademark infringement action is before the Court on the motion (ECF No. 65) for summary judgment filed by Defendant Duracell U.S. Operations, Inc. ("Duracell"), the only remaining Defendant in this case. For the reasons stated below, Duracell's motion will be granted.

## BACKGROUND

For purposes of the motions before the Court, the record establishes the following. Plaintiff Energizer Brands, LLC ("Energizer"), is the owner of two federally registered trademarks[1] for batteries, consisting of a pink toy bunny banging on a drum bearing the word "Energizer" (the "Energizer Bunny"). In certain areas outside of the United States, Duracell also uses a trademark for batteries that consists of a pink toy bunny (the

---

[1]     The trademarks were issued on January 7, 1997, and December 9, 2014.

"Duracell Bunny"). Duracell does not have a trademark registration for the Duracell Bunny in the United States.

In 1992 and 1995, the parties' predecessors-in-interest entered into agreements (collectively, the "Agreement") that restrict and limit the use of the Duracell Bunny on packaging in the United States. The Agreement provides that, "DURACELL agrees not to use the DURACELL Bunny on its product packaging" within the "United States of America, its territories and possessions and the facilities of its armed forces." ECF No. 70-3 at 5. The Agreement further provides that "[t]o the extent any party exercises control either by share ownership, license agreement, or otherwise, over a third party, such party will not permit any such third party to do anything pursuant to or in breach of this Agreement such party could not itself do." ECF No. 70-3 at 6.

In 2015 and 2016, Energizer discovered batteries in packaging bearing the Duracell Bunny being offered for sale in the United States, both online and in brick-and-mortar retail outlets, including a Phillips 66 gas station in Colorado and several Menard, Inc. ("Menards") stores in Missouri. In total, Energizer identified more than 30 entities selling Duracell Bunny Products, and informed Duracell or its parent company, The Procter & Gamble Company ("P&G"), of this fact.

Specifically, on September 28, 2015, Energizer informed P&G that Duracell Bunny products were being sold at the Phillips 66 gas station in Colorado, sent P&G a photograph of the packaging at issue (the label of which is written in Chinese language characters) and requested the removal and destruction of these Duracell Bunny products identified for sale in the United States. ECF No. 70-1. On October 9, 2015, P&G

responded, stating that P&G "does not, and has not, used, sold, and/or distributed the packaging as embodied within the representative photos within the United States," that the products were "diverted, gray market, or counterfeit," that P&G had "begun an investigation in an attempt to identify how such packaging may have been directed toward the United States market," and that "such products have a detrimental effect on the sales of Duracell branded batteries[,] [b]ut . . . the scourge of diverted goods, gray market goods, and counterfeit goods is often difficult to trace and more importantly stop, particularly in the case of China." ECF No. 70-2 at 4-5. After hearing nothing more from P&G over the next month, Energizer inquired further, and on November 23, 2015, P&G emailed Energizer that it had "nothing further to add" and that it "consider[ed] the matter closed." *Id.* at 2.

Energizer then filed this lawsuit on February 18, 2016. Energizer asserts the following claims against Duracell: breach of contract (Count 1); direct and contributory trademark infringement under 15 U.S.C. § 1114 (Counts 2 and 3); direct and contributory unfair competition, false representation, and false designation of origin under 15 U.S.C. § 1125(a) (Counts 4 and 5); direct and contributory trademark dilution under 15 U.S.C. § 1125(c) (Counts 6 and 7); trademark infringement and unfair competition under Missouri common law (Count 8); and trademark dilution under Mo. Rev. Stat. § 417.061 (Count 9).[2]

---

[2]    Energizer asserted identical claims against P&G and The Gillette Company, but because Energizer did not plead sufficient facts connecting these companies to the alleged misconduct, the claims against them were dismissed without prejudice on May 18, 2016. ECF No. 34. Energizer has not attempted to replead these claims.

On March 3, 2017, after discovery, Plaintiff voluntarily dismissed with prejudice its direct trademark liability claims (Counts 2, 4, 6, and 9 in full, and Count 8 in part). Therefore, all that remains are the breach of contract claim (Count 1), the contributory trademark liability claims (Counts 3, 5, and 7), and the unfair competition claim under Missouri common law (Count 8 in part).

In July 2016, approximately five months after Energizer filed this lawsuit, Duracell sent letters to some of the entities identified by Energizer as retailers selling the allegedly infringing products, including Menards and Phillips 66. These letters stated that "Duracell does not use, or authorize others to use, the Duracell Bunny on any product packaging in the United States," that if batteries in such packaging are available in the United States, they "may be counterfeit, or . . . diverted goods that are intended for sale only in particular foreign territories," and that Duracell had "become aware that DURACELL-branded battery products in packaging bearing the Duracell Bunny may be available in some of [the entities'] retail outlets in the United States." *See, e.g.,* ECF No. 87-31 at 2. Duracell ended these letters by asking the entities to "immediately stop advertising, distributing, and reselling such products" and to contact Duracell to discuss the issue. *Id.*; *accord* ECF Nos. 87-44, 87-45 & 87-46.

A corporate representative of Menards testified in a deposition in this case that Duracell does not own or have any control over Menards, does not control from whom Menards can buy products, and does not have any agreement with Menards requiring Menards to buy Duracell products only directly from Duracell. ECF No. 67-10 at 3-4. However, the Menards representative further testified that Menards took action

"immediately" on the day it received Duracell's letter, and that Menards "value[s] its relationship" with Duracell and was "willing to cooperate" with requests from Duracell. ECF No. 87-30 at 6-7.

Likewise, other entities responded to Duracell's letter by voluntarily complying with Duracell's request. Some also identified the suppliers of the Duracell Bunny products being sold in their stores; these suppliers were entities other than Duracell. *See, e.g.,* ECF No. 87-49 & 87-50. On April 27, 2017, Duracell filed a complaint in the United States District Court for the Northern District of Illinois against a company called "JRS Ventures, Inc.," alleging that this company was "knowingly engaged in the unauthorized importation and/or distribution of gray market Duracell batteries" and that this company was "not an authorized distributor of Duracell products or displays[.]" ECF No. 87-64 at 2, 7.

Duracell filed the present motion for summary judgment on July 14, 2017.

## ARGUMENTS OF THE PARTIES

Duracell argues that summary judgment is warranted on Energizer's contract claim because there is no evidence that any of the entities selling Duracell Bunny products in the United States is doing so under Duracell's control or with Duracell's permission. Likewise, Duracell argues that summary judgment is warranted on Energizer's remaining contributory trademark liability claims because under the standard adopted by the United States Supreme Court in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, Duracell can only be liable for contributory trademark infringement if it (1) intentionally induced the infringement or (2) continued to supply its product to one

whom it knew or had reason to know was engaging in trademark infringement. 456 U.S. 844, 853-54 (1982). Duracell argues that there is no evidence that Duracell intentionally induced any infringing conduct, and although Energizer has identified third parties that it asserts have sold Duracell Bunny products in the United States, there is no evidence that Duracell supplied the products to any of those third parties. Rather, Duracell argues that the evidence demonstrates that Duracell has taken steps to discourage the sale of any Duracell Bunny products in the United States, as such sales are contrary to Duracell's business interests. Duracell contends that Energizer's attenuated theory of liability, which would extend to downstream resellers who bought their products from entities other than Duracell, and even to retailers of counterfeit products, all outside the control of Duracell, is contrary to Supreme Court precedent and the parties' contract.

In response, Energizer argues that a reasonable jury could find that Duracell breached the parties' Agreement because there is sufficient evidence to infer that Duracell "exercised control" over the identified third-party sellers of the Duracell Bunny products in the United States. Energizer has admitted, in response to Duracell's statement of undisputed material facts, that there is no evidence that Duracell had any share ownership of, license agreement with,[3] or "power to govern the management and policies of," any of the entities selling Duracell Bunny products in the United States. ECF No. 86 at 11-12. But Energizer argues that the term "control" should be read more broadly to include Duracell's ability to influence third parties. Specifically, Energizer

---

[3] Energizer argues that "Duracell could and should have had agreements in place with distributors and retailers to deal with diverted product, specifically Duracell Bunny Products covered by the Agreement." ECF No. 86 at 12.

argues that the parties' course of performance reflects that the Agreement required Duracell to "do whatever it could reasonably do" and to take "every reasonable step" to have Duracell Bunny products removed from retailers in the United States. Energizer notes that Duracell did eventually (only after Energizer filed suit) send cease-and-desist letters to the third-party retailers, who in fact immediately complied with Duracell's requests, and that Duracell also sued one such retailer. Energizer contends that a jury could reasonably find from this evidence that Duracell "permitted third parties to engage in such conduct even when it could have exercised control to influence, eliminate, or restrict it." ECF No. 85 at 11.

For similar reasons, Energizer argues that a reasonable jury could find that Duracell's conduct amounts to contributory trademark infringement, dilution, or unfair competition. Energizer acknowledges that the standard of liability for such claims was set by *Inwood*, and in response to Duracell's statement of undisputed material facts, Energizer has admitted that "[t]here is no evidence that Duracell sold Duracell Bunny products to any entity selling . . . [or] in possession of Duracell Bunny products in the United States." ECF No. 86 at 3-4. But Energizer argues that the contributory infringement doctrine has been interpreted to extend liability to acts that the defendant should have realized would create an opportunity for misuse of a trademark, including willful blindness. Thus, Energizer argues that a reasonable jury could find Duracell liable for contributory infringement based on evidence that Duracell could have taken available and appropriate action at an earlier point in time "to ensure [that its customers] were aware that Duracell Bunny products could not be sold in the [United States]." ECF

No. 85 at 15.  Finally, Energizer argues that its state-law unfair competition claim is "broader" than federal trademark infringement, and that Energizer's evidence demonstrates that Duracell engaged in "questionable business practices," which a jury could find amounted to unfair competition.  ECF No. 85 at 16.

In reply, Duracell reiterates that, with respect to the contract claim, there is no evidence it had actual control over the infringing third-party retailers in this case. Duracell argues that the term "control" is unambiguous and does not encompass potential influence over a third party who may be willing to voluntarily comply with requests. Duracell likewise argues that no court has extended the reach of contributory trademark liability beyond a defendant's direct customers to, as Energizer desires, all subsequent resellers no matter how far removed from the defendant.  Duracell maintains that extending the doctrine so far would be impracticable because product suppliers cannot be expected to police the behavior of all subsequent resellers down the stream of commerce. In such a situation, Duracell argues, trademark owners like Energizer must police their own marks by suing the infringing parties directly.  Finally, Duracell argues that Energizer's state-law unfair competition claim fails for the same reason because that claim is based on the same conduct as, and is therefore coextensive with, the federal trademark infringement claim.

## DISCUSSION

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for

summary judgment, a court must view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences drawn from the record. *Combs v. The Cordish Cos., Inc*., 862 F.3d 671, 680 (8th Cir. 2017).

## Breach of Contract

The parties assume Missouri law applies to Energizer's contract claim, and the Court will, too. "Under Missouri law, "a breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Draper v. City of Festus, Mo.*, 782 F.3d 948, 954 (8th Cir. 2015) (citation omitted).

With respect to the third element, which is the only one at issue here, summary judgment is appropriate "where the language of the contract is clear and unambiguous such that the meaning of the portion of the contract in issue is so apparent that it may be determined from the four corners of the document." *Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*, 784 F.3d 1183, 1188 (8th Cir. 2015) (citation omitted). "Whether a contract is ambiguous is a question of law," which must be determined "consider[ing] the instrument as a whole, giving the words contained therein their ordinary meaning." *Id.* "The parties may disagree about the contract's meaning without it being necessarily ambiguous." *Id.* "If the contract is unambiguous, then the intent of the parties is to be gathered from the contract alone, and any extrinsic or parol evidence as to the intent and meaning of the contract must be excluded from the court's review." *Id.*

The provision of the Agreement at issue here is Duracell's obligation to not permit any third party over which it "exercises control either by share ownership, license agreement, or otherwise," to use the Duracell Bunny on product packaging within the United States. The Court agrees with Duracell that this provision is unambiguous and does not apply to Duracell's relationship with the third-party retailers at issue.

Energizer relies solely on the catchall phrase "or otherwise" to demonstrate control here. As Duracell notes, "control" generally means "[t]he direct or indirect power to govern the management and policies of a person or entity, whether through ownership of voting securities, by contract, or otherwise; the power or authority to manage, direct, or oversee." *Control*, Black's Law Dictionary (10th ed. 2014). Energizer has admitted that there is no evidence that Duracell had the power to govern the management and policies of any entity selling Duracell Bunny products in the United States. And the only evidence Energizer offers as to Duracell's power or authority to manage, direct, or oversee these entities is the evidence that Duracell sent letters to some of the entities requesting that they stop selling Duracell Bunny products, and the entities voluntarily complied in order to preserve a good business relationship. Such evidence is simply insufficient to demonstrate control.

Moreover, the Court agrees with Duracell that the principle of "ejusdem generis" also defeats Energizer's argument. That principle "holds that generally, when words of general description are used in connection with a specific enumeration of articles, the general description will include only articles similar to those specifically mentioned." *Clean Unif. Co. St. Louis v. Magic Touch Cleaning, Inc.*, 300 S.W.3d 602, 610 (Mo. Ct.

App. 2009) (applying the principle to contract construction under Missouri law).

Energizer has not offered evidence from which a reasonable jury could conclude that

Duracell's relationship with the third-party retailers here was similar to a relationship

created by "share ownership" or "license agreement." *See State ex inf. McKittrick v.*

*Wilson*, 166 S.W.2d 499, 501 (Mo. 1942) (applying the rule of ejusdem generis to

construe the term "or otherwise" to "refer to things of the same kind" as the preceding

specifically enumerated terms). The Court will grant Duracell's motion for summary

judgment on Count 1.

## **Contributory Liability**

"[A] manufacturer or distributor [who] [(1)] intentionally induces another to

infringe a trademark, or . . . [(2)] continues to supply its product to one whom it knows or

has reason to know is engaging in trademark infringement, . . . is contributorially

responsible for any harm done as a result of the deceit." *Inwood*, 456 U.S. at 853-54.

The Supreme Court has described this test as "narrow" and requiring a defendant to have

"intentionally induce[d] its customers to make infringing uses . . . [or] suppl[ied] its

products to identified individuals known by it to be engaging in continuing

infringement." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19

(1984).

Because there is no evidence of intentional inducement by Duracell here,

Energizer relies on the second prong. But Energizer has conceded that there is also no

evidence that Duracell ever supplied Duracell Bunny products to any of the third-party

retailers alleged to be engaging in the sale of such products in the United States, let alone

that Duracell has "continue[d]" to do so, as required under *Inwood*. ECF No. 86 at 3-4.

This admission is fatal to Energizer's contributory trademark liability claims.[4] *See*

*Georgia-Pac. Consumer Prods. LP v. Myers Supply, Inc.*, 621 F.3d 771, 774 (8th Cir.

2010) ("To prove contributory infringement, Georgia–Pacific must establish that Myers

continued to supply towels to its customers with knowledge that they were engaging in

trademark infringement with the paper towels.") (citing *Inwood*, 456 U.S. at 854);

*Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1128-29 (10th Cir. 2003) ("The

elements of a contributory liability claim are thus (1) *supply of a product* and (2)

knowledge of direct infringement.") (emphasis added).[5]  The Court will grant Duracell's

motion for summary judgment on Counts 3, 5, and 7.

## Missouri Unfair Competition

As Energizer has offered no evidence or non-conclusory argument in support of its

state-law unfair competition claim that differs from its federal contributory trademark

liability claims, and as "the Missouri common law of unfair competition is in accord with

---

[4]     The Court agrees with Duracell that the caselaw cited by Energizer—which addresses whether the defendant knew or should have known about the alleged direct infringement by a customer—is inapplicable here, where the dispute is not whether the alleged infringement by the third-party retailers was "known," but whether Duracell "supplied" its product to these third-party retailers.  Moreover, Energizer's citation to pre-*Inwood* cases with the suggestion that liability extends to defendants who failed to "reasonably anticipate" an infringing use by others (ECF No. 85 at 12-13, 12 n.14) is specious.  *See Inwood*, 456 U.S. at 854 n.13 (describing such a "reasonable anticipat[ion]" test as a "watered down and incorrect standard" for contributory infringement).

[5]     Duracell's lawsuit against one of the third-party retailers only further demonstrates that Duracell did *not* supply that retailer with, or authorize that retailer to sell or distribute, Duracell's products.

federal law," *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1331 n.6 (8th Cir. 1984), the Court will also grant Duracell's motion for summary judgment on the remaining portion of Count 8.

**Remaining Counterclaim and Experts**

The Court notes that Duracell has filed a single-count counterclaim against Energizer for breach of contract,[6] which remains pending. The parties have also filed motions to exclude certain expert testimony pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). ECF Nos. 71 & 75. The Court did not rely on any expert's opinion in ruling on the motion for summary judgment, and the *Daubert* motions are now moot to the extent they relate to claims resolved here as a matter of law. Before denying the motions as moot, however, the Court will ask the parties to advise the Court, not more than seven days after the date of this Memorandum and Order, whether any part of their *Daubert* motions relates to the counterclaim remaining in this case, and if so, which part(s).

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Duracell U.S. Operations, Inc.'s motion for summary judgment is **GRANTED**. ECF No. 65.

**IT IS FURTHER ORDERED** that, within **seven (7) days** of the date of this Memorandum and Order, the parties shall file a joint notice advising the Court whether any part of their motions to exclude expert testimony (ECF Nos. 71 & 75) relates to the

---

[6]   In its counterclaim, Duracell alleges that Energizer breached a contractual obligation to refrain from objecting to Duracell's good-faith use of the Duracell Bunny mark outside of the United States.

counterclaim remaining in this case, and if so, which part(s). Failure to comply with this Order will result in the denial of these motions as moot.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of October, 2017.